IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NELSON QUINTEROS, | : | No. 4:15-cv-02098 |
| | : | |
| Petitioner, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| WARDEN MARY SABOL, | : | |
| | : | |
| Respondent. | : | |

MEMORANDUM

**November 3, 2016**

The Petitioner here is a citizen of El Salvador who illegally crossed our country's southern border near Eagle Pass, Texas in 2001. Twelve years later, he was convicted of conspiracy to commit assault with a dangerous weapon in the United States District Court for the Eastern District of New York. According to the indictment in that case, Petitioner belonged to the notorious La Mara Salvatrucha gang, a criminal organization comprised primarily of Central American immigrants who commonly engage in narcotics trafficking and related acts of violence on America's streets.

At the completion of the thirty-month term of imprisonment served for his agreeing to take part in the assault of rival gang members with knives and baseball bats, United States Immigration and Customs Enforcement thought it wise to detain Petitioner pending what would assuredly be his eventual deportation. In the intervening months, insinuations of asylum and various other procedural hurdles unfortunately not uncommon to these proceedings have apparently delayed Petitioner's removal.

Petitioner initiated the instant habeas corpus action for the sole purpose of obtaining an individualized bond hearing before an immigration judge—nothing more.  Pursuant to the decision of the United States Court of Appeals for the Third Circuit in <u>Chavez-Alvarez v. Warden York County Prison</u>, 783 F.3d 469, 471 (3d Cir. 2015), the Petitioner is entitled to the hearing he seeks. No one disputes that.

What the parties have placed in dispute for this Court's ultimate determination, however, is the following narrow but recurrent issue: When a federal district court orders an immigration judge to conduct an

individualized bond hearing as requested in a habeas petition, is it improper for the district court to retain jurisdiction for the purpose of conducting its own determination on the merits, prior to the petitioner exhausting his administrate remedies and the agency's decision becoming final? As a matter of both federalist principles and common-sense practicality, I consider it axiomatic that a federal court should not retain jurisdiction post-referral, but to the extent that it must, such review is necessarily limited to ensuring that the petitioner received the hearing he was owed in the first place. Accordingly, prior to satisfactory showings of exhaustion and finality, the district court should not revisit the merits of the immigration judge's determination. To do so would be premature and would otherwise disregard established constitutional bounds.

From my perspective, express retention of jurisdiction for substantive purposes conflates the ability of a federal court to conduct an immigrant bond hearing on its own in the first instance (assuming, for the sake of argument, that exercising such power is appropriate and advisable) with its ability to conduct subsequent proceedings in a matter that it has

already referred to an administrative agency. Perhaps the core constitutional concern that I harbor, a concern keenly conceptualized by counsel for the Respondent, is that an immigration judge's conducting an individualized bond determination will necessarily moot an underlying habeas petition that solely requests such a hearing be held. Consequently, that mootness will unfasten the jurisdictional anchor on which Courts in this District have previously premised their ability to conduct such hearings.

Even more directly, however, I would be inclined to usher the analysis one step further from the nexus where counsel for the Respondent has neatly left it. What jurisdictional consequences would follow were a district court to grant the pending habeas petition outright and then refer the matter to an administrative agency for prompt determination? Certainly, the answer cannot be, on the basis of some broad construction of the precise source of jurisdiction it has expressly relinquished, that the district court at that stage retains the ability to hold a bond hearing. See Carmil v. Green, No. CV 15-8001 (JLL), 2015 WL 7253968, at *3 (D.N.J.

Nov. 16, 2015) ("Petitioner has already received the sole relief available to him under Diop and Chavez-Alvarez, a bond hearing, and as such his Petition would be moot and would warrant dismissal for that reason instead.").

"As a constitutional matter, federal courts were conceived of to function as institutions with vast authority, but limited jurisdiction." Nittany Outdoor Advertising, LLC v. College Township, --- F.Supp.3d ---, No. 4:12-CV-00672, 2016 WL 1393400, at *4 (M.D. Pa. Apr. 8, 2016). Failure to abide by the United States Constitution's explicit limitations on federal jurisdiction does, as Justice Antonin Scalia observed in dissent, "spring forth from . . . [a] diseased root: an exalted conception of the role of this institution in America." United States v. Windsor, 133 S. Ct. 2675, 2698 (2013).

The flourishing of our republican form of government demands that district courts, like other federalist institutions, faithfully and reciprocally adhere to the concept of separation of powers that underlies the Constitution. Thus, when a matter is referred to an administrative agency,

that action must wind through the prescribed stages of review before landing on a district court's desk. To the extent that federal courts value their freedom of decision-making, we should hesitate to prematurely snatch away the determinations that were properly reserved to either of our co-equal branches.

Abundant policy reasons undergird such rules as exhaustion and finality—expertise, finality, and efficiency are a few that come to mind. See Pierre v. Sabol, No. 1:11-CV-2184, 2012 WL 2921794, at *1 (M.D. Pa. July 17, 2012) (Caldwell, J.) ("Petitioner has failed to exhaust administrative remedies. Petitioner has the right to appeal the bond decision to the Board of Immigration Appeals (BIA) and, in fact, acknowledged that he has done so. We cannot consider his request for relief until he has exhausted his administrative remedies.").

Moreover, given the specific establishment of immigration judges as part of the Department of Justice's Executive Office for Immigration Review, my strong preference is to refrain from holding individualized bond hearings except in the most extraordinary circumstances. To proceed

otherwise would amount, I believe, to an entirely inefficient allocation of public resources. As the Honorable Malachy E. Mannion of this Court recently explained prior to entering an order that closed a similar case without explicitly retaining jurisdiction, "Because the Immigration Court has the expertise, familiarity, and authority to exercise jurisdiction over bond hearings such as those contemplated under Chavez–Alvarez, the court orders that an Immigration Judge conduct an individualized bond hearing for the petitioner, within thirty (30) days of this opinion." Soriano v. Sabol, --- F.Supp.3d ---, No. CV 3:16-0271, 2016 WL 2347904, at *6 (M.D. Pa. May 3, 2016).

The Report and Recommendation suggests that the matter be referred to an immigration judge but that jurisdiction be retained so that this Court or a magistrate judge can conduct further substantive proceedings. I disagree with that caveat. There is an established protocol for the review of an immigration judge's decisions, and Petitioner presents no reason why it should not be followed in his case. To the extent that this

case merits such review, we may cross that bridge when, if ever, we come to it.

The Report and Recommendation will adopted in part and rejected in part consistent with this Memorandum. An appropriate Order follows.

BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
United States District Judge